IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DEREK TEDROW,

    Plaintiff,

vs.

SWIFT TRANSPORTATION
COMPANY OF AMERICA,
LLC, et al.,

    Defendants.

Case No. 3:18-cv-01609-AA
**OPINION AND ORDER**

---

AIKEN, District Judge:

    In this wrongful death action, defendants admit liability for decedent Derek Tedrow's death and that plaintiff, Tedrow's estate, has sustained damages. The parties dispute the amount of damages. Plaintiff's alleged damages include the loss of services provided by decedent to his adult son Tanner Tedrow. Plaintiff has filed a Motion *in limine* (doc. 37) seeking an order prohibiting defendants from introducing evidence that disability programs or other family members could replace these lost

services at little or no cost to plaintiff. Plaintiff contends that such evidence is inadmissible at trial under Oregon's "collateral source" rule, ORS 31.580. For the reasons below, plaintiff's motion is GRANTED.

## BACKGROUND

Decedent Derek Tedrow was the father and sole parent of Tanner Tedrow and E.T., a minor. After Derek Tedrow's death, State Farm paid PIP benefits to the Estate, and the Social Security Administration paid death benefits to Tanner and E.T. Defendants agree that such payments are inadmissible collateral benefits under ORS 31.580 and are willing to stipulate to an Order excluding evidence of receipt of those payments, including information about any similarly situated person who receives social security payments or death benefits.

Plaintiff's damages claim includes economic damages for Tanner's loss of his father's services. Tanner has been diagnosed with Autism Spectrum Disorder with Accompanying Language Disorder; Other Specified Depressive Disorder; Language Disorder; and Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type.

The parties dispute whether Oregon law permits defendants to offer expert testimony about or evidence of low-cost or free services that may be available to Tanner through government, non-government, or non-profit disability programs or other family members. The parties also dispute the admissibility of evidence that Tanner has applied for SSD or SSI benefits.

## STANDARDS

Applying Oregon law to a wrongful death action, courts may award damages that include an amount that "[j]ustly, fairly and reasonably compensates" a decedent's child "for the loss" of, inter alia, "services of the decedent." ORS 30.020. These loss-of-service damages are "economic damages." ORS 31.710(2)(a); *Kahn v. Pony Express Courier Corp.*, 173 Or. App. 127, 160 (2001), *rev. den.*, 332 Or. 518 (2001) (discussing the definition of "economic damages" in a prior version of the statute). In determining the amount of loss-of-service damages to award on behalf of a decedent's child, a jury may consider the following:

(a) Any services the decedent customarily performed for (him / her / them) in the past;

(b) Any services the decedent might reasonably have been expected to perform for (him / her / them) in the future;

(c) The decedent's age, ability, life expectancy, health, habits, industry, sobriety, and thrift; and

(d) The age, health, and life expectancy of the decedent's (spouse / children / stepchildren / parents / stepparents).

Or. Unif. Civil Jury Instr. No. 71.02.

The "collateral source" rule limits both a court's final determination of damages and the admissibility of evidence related to a plaintiff's receipt of "collateral benefits." In 1982, the Oregon Legislature superseded the common-law "collateral source" rule[1] with what is now ORS 31.580:

---

[1] Originally a creature of Oregon common law, the rule prohibited courts from reducing an injured plaintiff's damages by the amount of benefits received from an independent third party—even if those benefits mean to repair the injury at issue. *White*, 347 Or. at 219–20 (citing *Cary v. Buress*, 169 Or. 24 (1942) (adopting the common law "collateral source" rule in Oregon)). In its nascent form,

> (1) In a civil action, when a party is awarded damages for bodily injury or death of a person which are to be paid by another party to the action, and the party awarded damages or person injured or deceased received benefits for the injury or death other than from the party who is to pay the damages, the court may deduct from the amount of damages awarded, before the entry of a judgment, the total amount of those collateral benefits other than:
>
> (a) Benefits which the party awarded damages, the person injured or that person's estate is obligated to repay;
>
> (b) Life insurance or other death benefits;
>
> (c) Insurance benefits for which the person injured or deceased or members of that person's family paid premiums; and
>
> (d) Retirement, disability and pension plan benefits, and federal Social Security benefits.
>
> (2) Evidence of the benefit described in subsection (1) of this section and the cost of obtaining it is not admissible at trial, but shall be received by the court by affidavit submitted after the verdict by any party to the action.

ORS 31.580.

## DISCUSSION

Plaintiff intends to offer expert testimony that Tanner needs long-term care and support to perform day-to-day functioning and will need care and support for the remainder of his life—care and support that his father would have provided. Plaintiff's experts will testify that Tanner will need care, assistance, and monitoring for an average of fourteen hours per day to permit him to reside in the least restrictive environment with consideration for his safety and dignity. Plaintiff's experts

---

this rule did not "concern itself with whether a plaintiff" achieves a "double recovery" as a result—that is, one recovery from a third party and another from a defendant for the same injury. *Id.* at 220.

estimate the present value of the loss of Derek Tedrow's services to Tanner at between 5.4 and 6 million dollars. Pl.'s Mot. in Lim., at 5.

Defendants intend to submit expert testimony that Tanner Tedrow may obtain services to replace his father's lost services from governmental and nongovernmental programs or from other family members and that these services are available to plaintiff at low or no cost. Defendants intend to use this testimony to demonstrate that Tanner's claims for lost services "would not justify so much in damages." Def.'s Resp. to Pl.'s Mot. in Lim., at 2. Plaintiff argues that this evidence is inadmissible under Oregon's collateral source rule, ORS 31.580, and under FRE 401 and 403.

"The amount one pays for services" can be "an important factor in determining the reasonable value of those services." *White v. Jubitz Corp.*, 347 Or. 212, 243 (2009). However, Oregon's "collateral benefits" rule limits the admissibility of evidence of *any* "collateral benefits" a plaintiff will receive, regardless of whether they fall under subsections (1)(a)–(d). ORS 31.580(2). Any evidence of collateral benefits to plaintiffs under ORS 31.580(1) is inadmissible at trial "when it discloses *the existence and amount* of a collateral source benefit." *White*, 347 Or. at 243 (emphasis added). A defendant may not admit any evidence of "collateral benefits" at trial—even to impeach a witness—and must wait to submit the evidence "by affidavit…after the verdict by any party to the action." *Gragg v. Hutchinson*, 217 Or. App. 342, 350 (2007); ORS 31.580(2).

Here, plaintiff may recover from defendants damages for the value of lost services Derek Tedrow was reasonably expected to perform in the future by

demonstrating the cost of replacement of those services. And defendants may "put plaintiff to his proof" for the elements of that claim. *See White*, 347 Or. at 243. But in so doing, defendants may not submit evidence at trial that the government or some other third party will replace those services at low or no cost to plaintiff.

Defendants argue that they seek to introduce evidence of "collateral *services*" that are not "collateral *benefits*" made inadmissible by ORS 31.580, which they argue are limited "to an amount of money." Def.'s Resp. to Pl.'s Mot. in Lim., at 3. In *White*, the Oregon Supreme Court rejected this argument. There, the court noted that plaintiffs may recover "the *value* of medical *services* made necessary by the tort." *White*, 347 Or. at 236 (citing with approval *Zehr v. Haugen*, 318 Or. 647, 656 n. 6 (1994), and *Restatement (Second) of Torts* § 924(f) (1979)) (emphasis added). The Court held that "a plaintiff may claim the reasonable *value* of medical charges without limitation to the amount that a third party pays or remains liable to pay on the plaintiff's behalf." *Id.* at 236–37 (emphasis added). A plaintiff may recover the value of these services even if they "had not paid those expenses and would not be required to do so." *Id.* at 237 (citing *Willis v. Foster*, 229 Ill. 2d 393, 414 (2008)).

Oregon courts have also rejected defendants' argument that "collateral benefits" must be amounts of money and that it only wants to introduce evidence of services. "Collateral benefits" are not "limited to cash payments made to a plaintiff," but may "take other forms, such as a service, gift, and financial help." *White v. Jubitz Corp.*, 219 Or. App. 62, 72 (2008), *aff'd*, 347 Or. 212 (2009). And "services" can have the monetary value required by the definition of "economic damages" in ORS 30.020

"even if they do not in fact result in the production of tangible goods or in remuneration to the person performing them." *Kahn*, 173 Or. App. at 158.

Under ORS 31.580(2), defendants may not introduce evidence at trial that discloses the existence or amount of any collateral benefit to Tanner Tedrow or E.T. This includes evidence of those benefits the parties have stipulated to exclude: Social Security death benefits, Social Security disability and Social Security insurance payments, funds or trusts that may help Tanner Tedrow pay for replacement of lost services, PIP payments, and the receipt of any of the above benefits by persons similarly situated to Tanner Tedrow or E.T. It also includes evidence that Tanner Tedrow's lost services could be replaced by the third party provision of services for free or at low cost, including such benefits from the Social Security Administration, the Deschutes County Developmental Disabilities program, or another governmental, nongovernmental, or nonprofit entity, the application by Tanner Tedrow for such benefits, and such benefits Tanner Tedrow may receive from relatives.

While the above evidence is inadmissible at trial, defendants may submit it post-verdict pursuant to ORS 31.580(2). At that time, the parties may argue whether any of the evidence submitted falls within ORS 31.5809(1)(a)–(d) or if it permits a reduction in the awarded damages. At trial, the question for the jury is what services Derek Tanner was reasonably expected to provide for Tanner in the future and what is the present value of those services. Defendants may submit evidence to contradict plaintiff's assertions on the type or value of those services. Defendants remain permitted to submit evidence that the cost of services proposed by plaintiff is

unreasonable or that Derek Tanner would not reasonably have been expected to provide the amount or type of services that plaintiff asserts.

Plaintiff also argues that evidence of Tanner Tedrow's application for or receipt of benefits under federal or state disability programs is irrelevant under FRE 401 and prejudicial under FRE 403. In general, the amount paid for services is admissible "and often may be an important factor in determining the reasonable value of those services." *White*, 347 Or. at 243. But where a third party provides benefits to a plaintiff that reduce the cost to the plaintiff of repairing an injury, the "collateral benefits" rule ensures that the plaintiff's damages do not suffer reduction as a result. This is because a plaintiff may collect the value of services made necessary by the injury. To a jury, therefore, evidence of collateral benefits given to the plaintiff is irrelevant to the amount of damages to award for loss of services.

## CONCLUSION

For the reasons above, plaintiff's Motion *in Limine* (doc. 37) is GRANTED.

IT IS SO ORDERED.

Dated this 10th day of March 2020.

_____
Ann Aiken
United States District Judge